## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STACEY JACKSON,                              :
KEYSHA SCOTT, AND                            :
SHEENA WARREN                                :
Individually, and on behalf of all           :
others similarly situated                    :
                                             :
    Plaintiffs                              :    DOCKET NO:
v.                                           :
                                             :
HANDS-ON-NURSING, INC.  d/b/a                :    Complaint – Class Action
HANDS-ON-NURSING                             :
                                             :    Jury Trial Demanded
    Defendant                               :

## <u>COLLECTIVE ACTION AND CLASS ACTION COMPLAINT</u>

Plaintiffs, Stacey Jackson, Keysha Scott, and Sheena Warren (Plaintiffs) individually, and on behalf of all others similarly situated, (the Class), by and through their undersigned attorneys, Peggy M. Morcom, Esquire, and Buzgon Davis Law Offices, bring this action against Defendant, Hands-on-Nursing, Inc. doing business as Hands-On-Nursing (Defendant) for failing to pay its direct care workers all of the overtime pay required by the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.,* Pennsylvania's Minimum Wage Law (PMWL), 43 Pa.Stat.Ann. §§ 333.101, *et seq.,* and Pennsylvania's Wage Payment and Collection Law (PWPCL), 43 Pa.Stat.Ann. §§ 2601.1, *et seq.*  Plaintiffs allege as follows:

1.  This case arises out of Defendant's systemic, companywide failure to pay Plaintiffs and potentially hundreds of similarly situated employees the overtime wages to which they were entitled for work performed as direct care workers. Defendant paid direct care workers straight time only, omitting or incorrectly calculating the overtime premium required by law.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). Additionally, this Court has jurisdiction over Plaintiff's State law claims pursuant to the doctrine of supplemental jurisdiction, as provided by 28 U.S.C. § 1367.

3.  Venue is proper in United States District Court for the Middle District of Pennsylvania because Plaintiffs reside in this District, Defendant conducts business in this District, and the events or omissions giving rise to the claims occurred in this District. 28 U.S.C. § 1391.

## PARTIES

4.  Plaintiffs are residents of Lebanon County, Pennsylvania.

5.  At all times relevant to this case, Plaintiffs were employees of Defendant, as defined by the FLSA, 29 U. S. C. § 203(e)(1) and (g), by the PMWA, 43 Pa.Stat.Ann. § 333.103, and the PWPCL, 43 Pa.Stat.Ann. § 260.2a, and worked for Defendant as direct care workers in and around Lebanon County, Pennsylvania.

6. Plaintiffs filed a Consent to Join this action. *See Exhibit A*.

7. Defendant, Hands-on-Nursing is a Pennsylvania corporation with its headquarters at 701 Cumberland Street, Lebanon, Pennsylvania 17042. Hands-on-Nursing, Inc. is also known as Hands-on-Nursing. Defendant is an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), the PMWA, 43 Pa.Stat.Ann. § 333.103, and the PWPCL, 43 Pa.Stat.Ann. § 260.2a.

8. Defendant commonly provides direct care services, including companionship, personal care and domestic assistance to individuals with disabilities and the elderly in their homes.

9. Defendant operates in the Commonwealth of Pennsylvania. Upon information and belief, it employs over 100 employees in Pennsylvania.

10. Defendant's gross annual sales made or business done has been $500,000 or greater per year at all relevant times.

11. Defendant employs direct care workers to provide companionship, personal care and domestic assistance for eligible individuals (clients) in Pennsylvania.

12. Defendant employed Plaintiffs and other similarly situated direct care workers in Pennsylvania.

13. In the alternative, Defendant is a joint employer with the clients for whom Plaintiff and others similarly situated direct care workers provide care. *See* 29 C.F.R. § 791.2(a); DOL Administrators Interpretation 2014-2.

14. Stacey Jackson was hired by Defendant in October of 2013, and she remained employed through June 11, 2018.

15. Keysha Scott was hired by Defendant in August of 2015, and she remained employed through March of 2017.

16. Sheena Warren was hired by Defendant in June of 2012 and she continues to be employed.

17. Plaintiffs and those similarly situated are or were employed by Defendant as direct care workers. They provide companionship, personal care and domestic assistance services to clients, including bathing, feeding, some light house work, arranging transportation or transporting the client to appointments, administering medication, and other similar tasks.

18. Plaintiffs and those similarly situated are entitled to be paid one and a half times (1½) their regular rate (the overtime premium) for all hours worked over 40 per week.

19. At all times, Defendant maintained a policy that provided, "overtime (time and a half) is paid to employees who work for Hands-on-Nursing Agency more than 80 hours in a 14-day period with the same client only. The overtime rate

is paid for all hours worked after the first 80 hours and is based on the pay rate of the assignment(s) being worked during the overtime period.

This policy is maintained in the Hands-on-Nursing Agency Employee Policy Handbook. *(See Exhibit B attached hereto.)*

20. Plaintiff and those similarly situated have been entitled to payment of overtime premiums under the Pennsylvania Minimum Wage Act throughout the entire time period covered by this suit.

21. Plaintiff and those similarly situated have been entitled to payment of overtime premiums under the Fair Labor Standards Act since at least January 1, 2015.[1] 29 CFR § 552.109(a).

22. At all times, Defendant maintained a policy of paying all hours worked at the regular hourly rate, with no overtime premium for hours worked over 40 per week.

23. Defendant never paid overtime wages for work performed prior to January 1, 2016 or after December 31, 2016.[2]

24. Defendant failed to pay all overtime premiums due. First, Defendant has not totaled all hours worked in calculating overtime, instead, considering only

---

[1] Based on an investigation by the Pennsylvania Department of Labor and Industry for the year 2016 only, it was determined that Hands-on-Nursing, Inc. failed to comply with these relevant statutes and Defendants were ordered to pay Plaintiffs for overtime worked in the year 2016 only. No other years were examined by the Pennsylvania Department of Labor and Industry.

[2] Based on an investigation by the Pennsylvania Department of Labor and Industry for the year 2016 only, it was determined that Hands-on-Nursing, Inc. failed to comply with these relevant statutes and Defendants were ordered to pay Plaintiffs for overtime worked in the year 2016 only. No other years were examined by the Pennsylvania Department of Labor and Industry.

hours worked with a single client. Second, Defendant excluded time spent traveling from one client to the next. Third, Defendant has not paid overtime due even in some work weeks where more than 40 hours work was completed for a single client as reflected on paystubs issued by Defendant.

25. During the relevant time periods, Plaintiffs and others similarly situated regularly worked over 40 hours per week without receipt of the required overtime premium.

26. Plaintiffs seek to represent a collective action of similarly situated workers who were subject to this improper policy under the FLSA and a Rule 23 Class action of workers raising common issues under State law.

27. The FLSA exempts "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delinated by regulations of the secretary)." 29 U.S.C. § 213(a)(15). The secretary has defined and delineated those terms such that "third party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption provided by § 13(a)(15) of the act even if the employee is jointly employed by the individual or member of the family or household using the services." 29 C.F.R. § 552.109(a). Furthermore, no employer may avail itself of the companionship exemption if the

employee spends more than 20% of his or her time on work beyond simple provision of companionship. For example, if the time spent assisting with the activities of daily living, engaging in housework, meal preparation or assisting with medication or arranging for medical appointments constitutes more than 20% of the hours worked then no employer can claim the companionship exemption. 29 C.F.R. § 552.6. As such, of the exemption in this case does not apply to Plaintiffs or similarly situated workers. 29 C.F.R. § 552.109(a).

28. Pennsylvania law entitles direct care workers, who are not employed solely by a private household, such as those also employed by a third party agency, to receive overtime payments for hours worked over 40 per work week. *See* 43 Pa.Stat.Ann. §§ 26.03(a) 260.5(a), 333.105(a)(2). Defendant contracts with state agencies to provide Medicaid and Medicare funded direct care services to qualifying individuals who are elderly or disabled. In Pennsylvania, Defendant contracts with Pennsylvania's Department of Health and Human Services formerly known as Pennsylvania Department of Public Welfare.

29. Defendant is responsible for insuring that direct care workers meet the requirements imposed by the Commonwealth of Pennsylvania and complete screenings and background checks on perspective direct care workers based on these requirements to determine if they are approved for hire. The client must also agree to the perspective direct care worker.

30. After completing the screening, Defendant hires and authorizes the direct care worker and provides that person with instructions related to their employment, such as reporting of time, confirming the pay rate, and other similar tasks.

31. After employment begins, if a direct care worker fails to meet any of the requirements established by the Commonwealth of Pennsylvania, Defendant stops receiving public money from the Commonwealth and federal government to pay for the worker and notifies the worker that he or she is no longer eligible to be employed.

32. Defendant informs the direct care workers of the rate they will be paid and any changes to their pay rates. Defendant informs the client as to what rates the direct care worker can be paid, rather than taking direction from the client. Defendant informed Plaintiffs of changes to their rates without consulting with the clients for whom they provide care. Direct care workers and clients are told by Defendant that complaints about wage rates should be directed to Defendants. Any other issue related to the accuracy of payroll is dealt with between the direct care worker and Defendant.

33. Upon information and belief, Defendant or another entity acting on behalf of Defendant visited clients one or more times per year to assess their condition and evaluate the direct care workers job performance.

34. Defendant also retains the right to fire or discipline direct care workers.

35. Defendant maintains all employment records on the direct care workers.

36. Defendant informs direct care workers of the maximum number of hours they are permitted to work for a client each week. Some direct care workers provide care for more than one client, and Defendant informs them of the maximum number of hours authorized for each client.

37. Defendant tracks these hours by requiring direct care workers to complete weekly timesheets/billings slips and submit them to Defendant. Clients are required to review and verify direct care workers reported time.

38. When direct care workers switch from one client to another in the same work day, they are not permitted to report their travel time between the two worksites as part of their hours worked. Defendant administers payroll and issues paychecks to direct care workers. Those checks indicate payment is made by Hands-on-Nursing, Inc. Defendant also issues W-2's to direct care workers.

39. Defendant permitted the direct care workers to work more than 40 hours per week. Defendant was aware that direct care workers work more than 40 hours per week because hours are reported to Defendant reflecting more than 40 hours worked. At all relevant times, Defendant paid direct care workers at their regular rate for all hours worked including those over 40 per week.

40. Defendant willfully operated under a common policy or scheme to deprive the direct care workers it employs a proper overtime compensation by

paying them only their regular rate for all hours worked, in contravention of the requirements of Federal and State law mandating payment of one and half (1½) times their regular rate of pay for all hours worked over 40 in a work week.

41. Defendant was aware, or should have been aware, of its unlawful payment practices and recklessly chose to disregard the consequences of its actions.

42. Plaintiffs and others similarly situated have been harmed by Defendant's policies and practices and the loss of dually earned income they created, and they are entitled to lost wages, liquidated damages, interest, and reasonable attorney's fees and costs.

43. Plaintiff Jackson has worked as a direct care worker for Defendant since October of 2013. At that time, she was required by Defendant to undergo its background screening process.

44. When Ms. Jackson transitioned to employment with Defendant, Defendant notified her of the hourly rate that she would be paid.

45. In this role as a direct care worker, Ms. Jackson provided companionship, personal care and domestic assistance to individuals living with disabilities, including bathing, feeding, some light housework, arranging transportation for the client, providing medication reminders, and other similar tasks.

46. Ms. Jackson regularly worked at least 50 hours per week and sometimes more. For example, in the work week starting on April 1, 2018 worked 70 hours total, on the second work week in that pay period, the week beginning April 8, 2018 worked 117 hours. Similarly, timesheets from April 1 through April 14, 2018 show Ms. Jackson working 70 hours in the workweek beginning April 1, 2018, and 117 in the work week beginning April 8, 2018.

47. Plaintiff Scott has worked as a direct care worked for Defendant from August of 2015 through March of 2017. At that time, she was required by Defendant to undergo its background screening process.

48. When Ms. Scott transitioned to employment with Defendant, Defendant notified her of the hourly rate that she would be paid.

49. In this role as a direct care worker, Ms. Scott provided companionship, personal care and domestic assistance to individuals living with disabilities, including bathing, feeding, some light housework, arranging transportation for the client, providing medication reminders, and other similar tasks.

50. Ms. Scott regularly worked 60 hours per week for one client, and she would work for a second client for hours in excess of 20 hours per week. She was also "on-call" for additional clients in the event of gaps in care or emergencies. In total, Ms. Scott regularly works at least 60 hours per week and sometimes more.

51. Plaintiff Warren has worked as a direct care worker for Defendant since June of 2012. At that time, she was required by Defendant to undergo its background screening process.

52. When Ms. Warren transitioned to employment with Defendant, Defendant notified her of the hourly rate that she would be paid.

53. In this role as a direct care worker, Ms. Scott provided companionship, personal care and domestic assistance to individuals living with disabilities, including bathing, feeding, some light housework, arranging transportation for the client, providing medication reminders, and other similar tasks.

54. Ms. Warren regularly worked 60 hours per week and sometimes more.

55. Defendant is responsible for administering Plaintiffs' pay and tax withholdings.

56. Defendant's name alone is on Plaintiffs' pay stubs and timesheets/billing slips.

57. Defendants name alone is on Plaintiffs' W-2 forms.

58. Plaintiffs are/were paid every two weeks on an hourly basis, for all time reported on timesheets/billing slips that Defendant required them to fill out and submit to Defendant.

59. Plaintiffs overtime wages were not appropriately paid during the period of time they were employed by Defendant, with the exception of the

reimbursement for the time period January 1 through December 31, 2016, arising out of the Department of Labor and Industry Complaint.

60. During all relevant times, Plaintiffs were only paid straight time for hours worked in excess of 40 hours per week. Moreover, on days when they worked for more than one client, they were not paid at all for the time it required to travel from one client to the next.

## FLSA COLLECTIVE ACTION ALLEGATIONS

61. Plaintiff incorporates by reference paragraphs number 1- 60, as though fully set forth herein.

62. Defendant intentionally failed to pay its direct care workers all of the overtime pay required by the FLSA, 29 U.S.C. § 201, *et seq.*

63. Plaintiffs bring this action individually and/on behalf of all direct care workers in Pennsylvania, who are/were employed by Defendant for the period January 1, 2015 until the date of the final judgment in this matter and worked over 40 hours in one or more work weeks (the proposed FLSA Collective).

64. Members of the proposed FLSA Collective are similarly situated.

65. Members of the proposed FLSA Collective had substantially similar job requirements and pay provisions, and they were all subject to a common policy or practice that required or permitted them to perform work in excess of 40 hours per

week for the benefit of Defendant, without compensation at time and a half for hours worked over 40.

66. Members of the proposed FLSA Collective were all subject to Defendant's Overtime Policy. *See Exhibit B.*

67. Plaintiffs estimate that there are hundreds of similarly situated current and former direct care workers whose FLSA rights to overtime payments were violated by Defendant.

68. These similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

69. These individuals would benefit from the issuance of Court supervised notice and the opportunity to join in the present lawsuit.

70. Plaintiff and members of the proposed FLSA Collective should therefore be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 261(b).

71. A collective action will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and the FLSA Collective members.

72. Plaintiffs requests that they be permitted to serve as a representative of those who consent to participate in this action and that the action be granted collective action status pursuant to 29 U.S.C. § 216(b).

## RULE 23(B)(3) PENNSYLVANIA CLASS ACTION ALLEGATIONS

73. Plaintiff incorporates by reference paragraphs numbered 1-72, as though fully set forth herein.

74. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring a claim for relief to remedy Defendant's violations of the Pennsylvania Minimum Wage Act (PMWA), 43 Pa.Stat.Ann. § 333.103.

75. Plaintiffs seek to bring these claims on behalf of all direct care workers in Pennsylvania who have been or will be employed by Defendant at any time between three (3) years prior to the filing of this Complaint and until the date of final judgment in this matter (the Rule 23 Class).

76. The proposed Class is easily ascertainable. The number and identity of Class members may be determined from Defendant's payroll records and time records.

77. The proposed Class also meets all the requirements of Rule 23(a) and (b) (3):

a. Numerosity: Upon information and belief, the proposed Class is at least several hundred individuals. This Class size is so numerous that joinder of all Class members is impracticable. In addition the disposition of these individuals' claims as a Class will benefit both the parties and the Court.

15

b. Commonality: Plaintiffs and all members of the proposed Class have been harmed by Defendant's failure to compensate direct care workers for all hours worked, including time and half for hours in excess of 40 hours per week. Therefore, there is a well defined commonality of interest and the question of law and fact applicable to Plaintiffs and the putative Class. Those common questions include, but are not limited to, the following:

i. Whether Defendant failed or refused to pay Plaintiffs and members of the proposed Class overtime wages for hours worked in excess of 40 hours per week;

ii. Whether Defendant's refusal to pay such compensation is a violation of the PMWA;

iii. Whether Defendant's refusal to pay such compensation is in violation of the PWPCL; and

iv. Whether Defendant's refusal to pay overtime was willful.

c. Typicality: Plaintiffs and members of the proposed Class were subject to the same unlawful policies, practices, and procedures and sustained similar losses, injuries and damages. All Class members were subject to the same compensation practices by Defendant, as alleged herein, through which they were paid based on hours worked but were not paid all earned wages, including time and a half for hours worked over 40 hours per week. Defendant's compensation

policies and practices affected all Class members similarly, and Defendant

benefitted from this type of wrongful acts against each Class member. Plaintiffs

claims are therefore typical of the claims that could be brought by any member of

the Class, and the relief sought is typical of the relief that could be sought by each

member of the Class in separate actions.

 d. Adequacy of Representation: Plaintiffs are able to fairly and

adequately protect the interest of all members of the Class, they are challenging the

same practices as the Class a whole, and there are no conflicts of interest between

Plaintiffs and members of the proposed Class. Plaintiffs have retained counsel who

has experience and competent in both wage and hour law and complex litigation.

 e. Predominance and Superiority: The common questions identified

above predominate over any individual issues, which would relate solely to the

amount of relief due to each Class member. Such individual relief issue should be

readily resolved by reference to the timesheets/billing slips submitted to

Defendant. A Class action is superior to other available means for the fair and

efficient adjudication of this controversy. Individual joinder of all Class members

is impracticable. Class action treatment will permit a large number of similarly

situated persons to prosecute their common claims in a single form simultaneously,

efficiently, and without the necessary duplication of effort and expense that

numerous individual actions in gender. Because the losses, injuries and damages

suffered by each of the individual Class members are small in a sense pertinent to

Class action analysis, the expense and burden of individual litigation would make

it extremely difficult or impossible for the individual Class members to redress the

wrongs done to them.

       f. On the other hand, important public interest will be served by

addressing the matter as a Class action. The cost to the Court system and the public

for adjudication of individual claims separately would be substantial and

significantly more than if the claims are treated as a Class action. Prosecution of

separate actions by individual members of the proposed Class would create a risk

of inconsistent and /or varying adjudications with respect to the individual

members of the Class, establishing incompatible standards of conduct for

Defendant and resulting in the impairment of Class members' rights and the

disposition of their interest through actions to which they were not parties. The

issues in this action can be decided by means of common, Class wide proof. In

addition, if appropriate, the Court can and is empowered to fashion methods to

efficiently manage this action as a Class action.

       g. Pursuit of this action collectively will provide the most efficient

mechanism for adjudicating the claims of Plaintiffs and members of the proposed

Class.

## COUNT I

### FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *et seq.*
### ON BEHALF OF PLAINTIFF AND THE FLSA COLLECTIVE

78. Plaintiffs incorporate by reference the allegations asserted in paragraphs 1 through 77, as though fully set forth herein.

79. Defendant is an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), and is engaged in commerce within the meaning of the FLSA, § 203(b), (s), (1).

80. The FLSA requires covered employers like Defendant to pay non-exempt employees like Plaintiffs and the FLSA Collective no less than one and a half (1½) times their regular rate of pay for all hours worked in excess of 40 in a work week. 29 U.S.C. § 207.

81. Plaintiffs in the FLSA Collective regularly worked more than 40 hours per week for Defendant, but Defendant did not properly compensate them for all of their overtime hours as required by the FLSA.

82. The Defendant did not and has not made a good faith effort to comply with the FLSA as it relates to the compensation of Plaintiffs and the FLSA Collective.

83. Defendant knew Plaintiffs and the FLSA Collective worked overtime without proper compensation, and it willfully failed and refused to pay Plaintiffs

and the FLSA Collective wages at the required overtime rates. *See* 29 U.S.C. §
255.

84. Defendant's willful failure and refusal to pay Plaintiffs in the FLSA
Collective overtime wages for time worked violates the FLSA. 29 U.S.C. § 207.

85. As a direct and approximate result of these unlawful practices, Plaintiffs
and the FLSA Collective suffered and continues to suffer wage loss and are
therefore entitled to recover unpaid overtime wages for up to 3 years prior to the
filing of their claims, liquidated damages or prejudgment interest, attorney's fees
and costs and such other legal and equitable relief as the Court deems just and
proper.

## COUNT II

## PENNSYLVANIA MINIMUM WAGE ACT,
### 43 Pa.Stat.Ann. §§ 333.101 *et seq.* ON BEHALF OF PLAINTIFFS AND THE
### RULE 23 CLASS MEMBERS

86. Plaintiffs incorporate by reference the allegations asserted in paragraphs
1 through 85, as though fully set forth herein.

87. At all times relevant to this action, Plaintiffs and the Rule 23 Class were
employees of Defendant, and Defendant has been an employer within the meaning
of the PMWA, 43 Pa.Stat.Ann. § 333.103.

88. The overtime wage provision of the PMWA, 43 Pa.Stat.Ann. § 333.104(c) and its supporting regulations, 34 PA Code § 231.41 applied to Defendant's employment of Plaintiffs and the proposed Class.

89. Defendant has failed to pay Plaintiffs and the Rule 23 Class the overtime wages to which they were entitled under the PMWA, 43 Pa.Stat.Ann. § 333.104(c).

90. By Defendant's failure to pay Plaintiffs and the Rule 23 Class members overtime wages for hours worked in excess of 40 per week, it has willfully violated the PMWA and the supporting regulations.

91. Due to the Defendant's violations of the PMWA, Plaintiffs and the Rule 23 Class members are entitled to recover from Defendant their unpaid overtime wages, reasonable attorney's fees and costs of the action, and pre-judgment and post-judgment interest, as well as liquidated damages. *See* 43Pa.Stat.Ann. § 333.113, §260.10.

## COUNT III
## PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW, 43 Pa.Stat.Ann. § 2601.1, *et seq.* ON BEHALF OF PLAINTIFF CICOLELLO AND THE RULE 23 CLASS MEMBERS

92. Plaintiffs incorporate by reference the allegations asserted in paragraphs 1 through 91, as though fully set forth herein.

93. Plaintiffs and the Rule 23 Class earned overtime as part of their work for Defendant.

94. Defendant, however, failed to pay Plaintiffs and the Rule 23 Class overtime payments as wages earned in the succeeding pay period after they were earned, in violation of the Pennsylvania Wage Payment and Collection Law (PWPCL), which carries the statute of limitations of three (3) years. 43 Pa.Stat.Ann. §§ 260.3 (a), 260.5(a), 260.9a(g).

95. At times relevant to this action, Plaintiffs and the Rule 23 Class were employees of Defendant, and Defendant has been an employer within the meaning of the PWPCL and are therefore subject to the PWPCL, 43 Pa.Stat.Ann. § 260.2(a).  By Defendant's failure to pay Plaintiffs and the Rule 23 Class members overtime wages in the succeeding pay period after the overtime was earned, Defendant has willfully violated the PWPCL.

96. Due to the Defendant's violations of the PWPCL, Plaintiffs and the Rule 23 Class members are entitled to recover from Defendant their unpaid overtime wages, liquidated damages, reasonable attorney's fees and costs of the action, and pre-judgment and post-judgment interest. *See* 43Pa.Stat.Ann. §§ 260.9(a)(b), 260.10.

## **PRAYER FOR RELIEF**

Plaintiffs and all those similarly situated, collectively request that this Honorable Court provide the following relief:

1. Issue an Order certifying this Class as a collective action under the FLSA and designate the Plaintiffs as the representative of all those similarly situated under the FLSA collective action, 29 U.S.C. § 216(b).

2. At the earliest possible time, authorize that notice of this collective action be issued by the Court or Plaintiffs to all persons who have at any time since January 1, 2015, up through and including the date of this Court issuance of Court's supervised notice, being employed by Defendant as direct care workers. Such notice shall inform them that this civil action has been filed, the nature of the action, and the right to join this lawsuit if they believe they were denied proper wages.

3. Grant leave to add additional Plaintiffs or claims by Motion, the filing of written consent forms, or any other method approved by the Court.

4. Issue an Order certifying Class of Pennsylvania employees pursuant to Rule 23 and designate Plaintiffs as Class representatives.

5. Issue an Order appointing the undersigned counsel as Class counsel pursuant to Rule 23(g).

6. Award Plaintiffs and all similarly situated employees actual damages for unpaid wages and liquidated damages equal to the unpaid wages found due to Plaintiffs and the Class as provided by the FLSA, 29 U.S.C. § 216(b), and award Plaintiffs and the Rule 23 Class members actual

damages for unpaid wages and liquidated damages in the amount of twenty-five percent (25%) of the unpaid wages found due to Plaintiffs in the Class as provided by the PMWA and the PWPCL, 43 Pa.Stat.Ann. § 260.10.

7. Award Plaintiffs and all those similarly situated pre and post-judgment interest at the statutory rate as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to Pennsylvania law, 41 Pa.Stat.Ann. § 202.

8. Award Plaintiffs and all those similarly situated attorney's fees, costs, and disbursements as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the PMWA and the PWPCL, 43 Pa.Stat.Ann. § 260.9 (a), 333.113.

9. Award Plaintiffs and all those similarly situated further legal and equitable relief as the Court deems necessary, just and proper.

Respectfully submitted,

*/s/ Peggy M. Morcom*
Peggy M. Morcom, Esquire
Attorney ID: 92463
Buzgon Davis Law Offices
525 South 8th Street
Lebanon, PA 17042
Morcom@buzgondavis.com
(717) 274-1421
Attorney for Plaintiffs, the putative FLSA Collective and the putative Rule 23 Class.

Date: 12/27/18

## VERIFICATION

The undersigned hereby verifies that the statements in the foregoing document are based upon information which has been furnished to counsel by me and information which has been gathered by counsel in the preparation of this lawsuit. The language of the foregoing document is that of counsel and not my own. I have read the foregoing document and to the extent that it is based upon information which I have given to counsel, it is true and correct to the best of my knowledge, information and belief. To the extent that the contents of the foregoing document are that of counsel, I have relied upon my counsel in making this verification. The undersigned also understands that the statements therein are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.


Stacey Jackson

Date: 11 | 16 | 18

## **VERIFICATION**

The undersigned hereby verifies that the statements in the foregoing document are based upon information which has been furnished to counsel by me and information which has been gathered by counsel in the preparation of this lawsuit. The language of the foregoing document is that of counsel and not my own. I have read the foregoing document and to the extent that it is based upon information which I have given to counsel, it is true and correct to the best of my knowledge, information and belief. To the extent that the contents of the foregoing document are that of counsel, I have relied upon my counsel in making this verification. The undersigned also understands that the statements therein are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

_Keysha Scott_
Keysha Scott

Date: _11-21-18_

## **VERIFICATION**

The undersigned hereby verifies that the statements in the foregoing document are based upon information which has been furnished to counsel by me and information which has been gathered by counsel in the preparation of this lawsuit. The language of the foregoing document is that of counsel and not my own. I have read the foregoing document and to the extent that it is based upon information which I have given to counsel, it is true and correct to the best of my knowledge, information and belief. To the extent that the contents of the foregoing document are that of counsel, I have relied upon my counsel in making this verification. The undersigned also understands that the statements therein are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.


Sheena Warren

Date: 11/10/18

**CONSENT TO JOIN COLLECTIVE ACTION**
**PURSUANT TO THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 216(b)**

Name: _____ Stacey Jackson _____

     1.    I am over the age of 18 and competent to give my consent in this matter.

     2.    I consent and agree to pursue my Fair Labor Standards Act and State law claims arising out of unpaid overtime wages against Hands-on-Nursing, Inc. doing business as Hands-on-Nursing, and any other related entities or affiliates, directly and as joint employers.

     3.    During the past 3 years, while working as a direct care worker of Defendant, Hands-on-Nursing, Inc., there were occasions when I worked over 40 hours per week and I did not receive proper compensation for all hours worked, including overtime pay.

     4.    I choose to be represented by Buzgon Davis Law Office for all purposes in this action and authorize them to take any steps necessary to pursue my claims, including filing new lawsuits.

     5.    I understand that I may withdraw this consent at any time by notifying the above listed attorney in writing.

Date: _11 / 16 / 18_____

_Stacey Jackson_____
Signature

_Stacey Jackson_____
Print Name

_717-639-7081_____
Telephone number

**EXHIBIT**

**A**

ALL-STATE LEGAL®

1

## CONSENT TO JOIN COLLECTIVE ACTION
## PURSUANT TO THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 216(b)

Name:      Keysha Scott

    1.    I am over the age of 18 and competent to give my consent in this matter.

    2.    I consent and agree to pursue my Fair Labor Standards Act and State law claims arising out of unpaid overtime wages against Hands-on-Nursing, Inc. doing business as Hands-on-Nursing, and any other related entities or affiliates, directly and as joint employers.

    3.    During the past 3 years, while working as a direct care worker of Defendant, Hands-on-Nursing, Inc., there were occasions when I worked over 40 hours per week and I did not receive proper compensation for all hours worked, including overtime pay.

    4.    I choose to be represented by Buzgon Davis Law Office for all purposes in this action and authorize them to take any steps necessary to pursue my claims, including filing new lawsuits.

    5.    I understand that I may withdraw this consent at any time by notifying the above listed attorney in writing.

Date: _11-21-18_

Keysha Scott
Signature

Keysha Scott
Print Name

(717) 279-1538
Telephone number

## CONSENT TO JOIN COLLECTIVE ACTION
## PURSUANT TO THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 216(b)

Name: _____ Sheena Warren _____

1.      I am over the age of 18 and competent to give my consent in this matter.

2.      I consent and agree to pursue my Fair Labor Standards Act and State law claims arising out of unpaid overtime wages against Hands-on-Nursing, Inc. doing business as Hands-on-Nursing, and any other related entities or affiliates, directly and as joint employers.

3.      During the past 3 years, while working as a direct care worker of Defendant, Hands-on-Nursing, Inc., there were occasions when I worked over 40 hours per week and I did not receive proper compensation for all hours worked, including overtime pay.

4.      I choose to be represented by Buzgon Davis Law Office for all purposes in this action and authorize them to take any steps necessary to pursue my claims, including filing new lawsuits.

5.      I understand that I may withdraw this consent at any time by notifying the above listed attorney in writing.

Date: _____ 11/16/18 _____         _____
                                    Signature

                                    _____
                                    Print Name

                                    (717) 612-8169
                                    Telephone number

1

# HANDS-ON NURSING AGENCY



# EMPLOYEE POLICY HANDBOOK



EXHIBIT

B

ALL-STATE LEGAL®

--+--+--+--+--+--+--+--+--+--+--+--+--

**10**

# COMPENSATION AND BENEFITS

### Hourly Wage Program

Hands-On Nursing Agency staff are classified as temporary, per diem or part-time employees. As such, employees are free to accept or reject any assignment offered to them. Keep in mind, however, the coordinators will regularly call those people who are reliable and likely to accept work.

Hands-On Nursing Agency maintains compensation levels consistent with those prevailing in our service area in the same work categories. The human resource department monitors prevailing wage levels and periodically recommends to management adjustments to wage ranges. Each employee receives an annual review; however, the management does not guarantee wage increases at any particular time. In addition, each Home Health employee will receive a 200 hour evaluation following the first day of work, unless discussed differently with the individual. Upon **EXCELLENT** evaluation an increase in their hourly wage will be determined. The quality of work performed by our home care staff affects our competitive position in the home care business and enables our agency to keep compensation levels consistently high.

Hands-On Nursing Agency does have different pay scales. For example: Staff Relief for CNA's, LPN's and RN's will continue a higher hourly rate. Staff Relief rates are competitively higher in our service area's. Home Health rates are competitively lower in our service area's compared to Staff Relief. LPN's and CNA's that are interested and are scheduled for Home Heath Care will have adjustments in their hourly rate for Home Health Care Services completed. Staff Relief rates will differ, just as well, an LPN and a CNA may have to fluctuate in hourly rates. Hourly rate will be determined by what service the LPN or the CNA provides, (Staff Relief or Home Health Care Service). Further information on this topic will be reviewed with the individual's during their interviewing process and or orientation.

**11**

Overtime (time and a half) is paid to employees who work for Hands-On-Nursing Agency more than 80 hours in a 14-day period with the same client only. The overtime rate is paid for all hours worked after the first 80 hours and is based on the pay rate of the assignment(s) being worked during the overtime period.

All employees must inform the person making the assignment that accepting the additional work creates overtime. No one may work more than 40 hours in one week unless authorized by the agency.

### Holiday Pay

All employees will be compensated (time and a half) of the pay rate for assignments worked on the following holidays: New Year's Day, Easter, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day. This rate applies beginning at 12:00 AM and continues for a 24 hour period.

### Continuing Education

All Home Health employees are expected to attend continuing education in-services. Hands-On Nursing office staff will inform all employees of times and locations. Attendance to in-services will be GREATLY considered during evaluation time.

### Family Medical Leave

Home care staff employees may request up to 12 weeks job-protected, unpaid leave of absence for family medical leave for the following reasons:
- to care for employee's newborn child, adopted child or foster child;
- to care for employee's seriously ill spouse, child or parent;
- for employee's own serious health condition that makes his/her job performance impossible.

The employee's return to the same job assignment is contingent upon the client's approval, and therefore not guaranteed. Offering varied assignments is normal business conduct for the agency.